IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | |
| FOR AUTHORIZATION TO INSTALL ) | Magistrate No. 21-2134 |
| AND USE PEN TRAP DEVICES AND TO ) | **(UNDER SEAL)** |
| OBTAIN HISTORICAL AND PROSPECTIVE ) | |
| CELL SITE AND E911 DATA ) | |
| FROM T-MOBILE USA | |

**OMNIBUS APPLICATION AND AFFIDAVIT
FOR PEN TRAP DATA, HISTORICAL AND PROSPECTIVE CELL SITE DATA, AND
E911/GPS PRECISE LOCATION INFORMATION REGARDING A CELL PHONE
RELEVANT TO INVESTIGATION OF A FUGITIVE**

This is a hybrid application seeking authorization to obtain certain information related to a particular cellular telephone. Such information is needed in the continuing investigation of a fugitive from justice being actively sought by the United States Marshals Service. As set forth below, this application seeks various types of information related to said cellular telephone, including pen trap data, historical and prospective cell site data, and precise location data.

Certain providers of electronic communication service can only provide prospective cell tower information in conjunction with the installation of a pen register and/or trap and trace device. The United States is in need of such information. A certification from an Assistant U.S. Attorney will be simultaneously submitted at the above case number requesting that this court authorize the use of a pen register and/or trap and trace for **TARGET TELEPHONE (216) 334-3237**.

**I.     CERTIFICATION FOR PEN REGISTER AND TRAP AND TRACE**

Under 18 U.S.C. § 3122(a)(1), an Assistant U.S. Attorney may apply for an order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and trap and trace device.

Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by

the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. §3122(b). The undersigned Assistant United States Attorney is an "attorney for the government", the law enforcement agency conducting the investigation is the United States Marshals Service, and the Assistant United States Attorney hereby certifies that the information likely to be obtained by the requested pen-trap device on **TARGET TELEPHONE (216) 334-3237** is relevant to an ongoing criminal investigation being conducted by the United States Marshals Service in connection with, among other things, violations of 21 U.S.C. § 841(a)(1).  It is believed that Kareen ROCK has used and will continue to use the target cell phone number in furtherance of the subject offense(s) by continuing to avoid apprehension by law enforcement authorities. The foregoing is based on information provided to me in my official capacity by agents of the U.S. Marshals Service.

Dated: November 3, 2021

>*/s/ Jonathan D. Lusty*
>Jonathan D. Lusty
>Assistant United States Attorney
>U.S. Courthouse
>700 Grant Street, Suite 4000
>Pittsburgh, PA 15219
>PA ID No. 311180

**II.    APPLICATION AND AFFIDAVIT FOR A WARRANT**

I, Brandon D'Alessandro, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I am a Deputy U.S. Marshal (DUSM) with the United States Marshals Service (USMS) and have been employed in that capacity for the past 11 years. I am currently assigned to the Western Pennsylvania Fugitive Task Force (WPAFTF), Pittsburgh, Pennsylvania. My duties include the investigation and apprehension of federal fugitives, and assisting state and local law enforcement agencies in the apprehension of their fugitives who are wanted for violent offenses. On numerous occasions I have assisted in locating and arresting fugitives on information received from electronic records through court orders.

2.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of, among other things, 21 U.S.C. §§ 841(a)(l), 841(b)(l)(A)(viii), 841(b)(1)(B)(viii), 841(b)(1)(B)(vi), and 846 have been committed by Kareem ROCK. There is also probable cause for the issuance of a warrant authorizing **T-Mobile USA** to provide historical call detail information, historical cell tower/cell site information, prospective cell tower information, and prospective precise location information (including all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information) pertaining to one of its subscribers or customers both historically and prospectively for the requested periods of time. Since **T-Mobile USA** may only be able to provide prospective cell tower information in conjunction with the installation of a pen register and/or trap and trace device, and the Affiant is in need of such information, a certification has been provided from Assistant U.S. Attorney

3

Jonathan Lusty requesting that this court authorize the issuance of a pen register and/or trap and trace for TARGET TELEPHONE **(216) 334-3237**.

4. I make this affidavit in support of an application for a search warrant authorizing **T-Mobile USA** to provide historical call detail information and historical cell tower/cell site information pertaining to one of its subscribers or customers from September 20, 2021, to the date of this order.

5. I also make this affidavit in support of an application for a warrant authorizing **T-Mobile USA** to provide prospective cell tower/cell site information and precise location information (including all available E-911 Phase II data, GPS data, latitude-longitude data, and other Precise Location Information) pertaining to one of its subscribers or customers prospectively for TARGET TELEPHONE **(216) 334-3237** for a period of 45 days from the date of the warrant applied for herein.

## PROBABLE CAUSE

6. The following establishes probable cause to conclude that Kareem ROCK has, among other things, violated 21 U.S.C. § 841(a)(1) and is the subject of an active arrest warrant.

7. There is also probable cause to conclude that the target cell phone's location will assist law enforcement in arresting **ROCK**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. On August 24, 2021, a grand jury in the Western District of Pennsylvania indicted Kareem ROCK for violations 21 U.S.C. § 846, conspiracy to distribute and possess with the intent to distribute 500 grams or more of methamphetamine and 21 U.S.C. § 841(a)(l), 841(b)(l)(A)(viii), 841(b)(1)(B)(viii), 841(b)(1)(B)(vi), possession with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 40 grams or more

of a mixture and substance containing a detectable amount of fentanyl, and 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

9. On August 26, 2021, United States District Court for the Western District of Pennsylvania issued a warrant for arrest for Kareem ROCK.

10. On September 14, 2021, DEA delegated the fugitive investigation to USMS and DUSM D'ALESSANDRO was assigned the Warrant for ROCK.

11. On September 15, 2021, DUSM D'ALESSANDRO spoke to Task Force Officer (TFO) Eric HARPSTER. HARPSTER provided phone numbers that were known to be used at the time by Kareem ROCK and his girlfriend and codefendant, Kimari JACKSON. DEA was able to provide call detail records for both ROCK and JACKSON. After reviewing the records, it was determined that ROCK was no longer using this phone as of September 1, 2021. It should be noted that the DEA initiated a mass arrest of codefendants on August 31, 2021. DUSM D'ALESSANDRO determined that after learning of the arrests the day prior, ROCK discarded the cell phone and/or number he was using. After reviewing the call detail records for JACKSON, DUSM D'ALESSANDRO noticed a new cell phone number, (216) 334-3237, that frequently started communicating with JACKSON on September 1, 2021. In addition, TFO HARPSTER also provided that on September 3, 2021, he received a call from Kareem ROCK from a blocked number. TFO HARPSTER submitted a subpoena for his own call detail records for September 3, 2021. After receiving the records, TFO HARPSTER identified (216) 334-3237 as the number that called him from a blocked number.

12. On October 19, 2021, a Pen Register Trap and Trace order was signed and submitted to New Cingular Wireless. After New Cingular Wireless produced the records for this phone, it was determined that ROCK discarded this phone around October 15, 2021. DUSM

D'ALESSANDRO then received additional call detail records for JACKSON to identify another new caller to her phone. DUSM D'ALESSANDRO identified a new number, (216) 334-3237, that began calling JACKSON on October 1, 2021. This number was the fifth most frequent caller from October 1, 2021 through October 20, 2021. DUSM D'ALESSANDRO then received records for **TARGET TELEPHONE (216) 334-3327**. DUSM D'ALESSANDRO analyzed the records and created a common call report between **TARGET TELEPHONE** and the two previous phone numbers that ROCK was using. The **TARGET TELEPHONE** and the new previous numbers shared approximately 53 common callers. Based on the number of shared common callers, DUSM D'ALESSANDRO believes that the same individual utilized all three numbers and that the individual that utilized these three numbers is Kareem ROCK.

        13. Upon receipt of the physical location data for the target phone from the provider, it may be necessary for agents to use equipment at street level to home in on the exact location of the target cellular phone. This equipment is known as a cell site monitor or simulator, which can be either mounted in a vehicle or a hand-held unit (or both), and which, when combined with specific identification information for the target cell phone number from the provider (such as the device's ESN/IMSI/IMEI3), will capture and monitor the signals being transmitted between the target cell phone number and the provider's network. Agents plan to send signals to the target cellular phone in the area that will cause it, and non-target phones on the same provider network in close physical proximity, to emit unique identifiers, which will be obtained by the technology. Agents will use the information collected to determine information pertaining to the physical location of the target cellular device by observing the signal strength of this connection to determine when they are getting closer to the target cell phone number. At no point does the cell site monitor intercept any content of communications. This application seeks authorization to use

the cell site monitor when its use is necessary or more expedient to obtain the precise location of the target cell phone number.[1]

21.     Pursuant to 18 U.S.C. §2705(b), to the extent applicable, the government seeks a directive to **T-Mobile USA** not to disclose the government's acquisition of the information requested herein until further notice. Pursuant to 18 U.S.C. § 3103a, the government seeks authorization to delay our notification to the subscriber or user of the target cell phone number until 30 days after acquisition of the last disclosures authorized by the Court's order (unless extended for good cause shown by an updated showing of the need for further delay).  The grounds for this request are as follows: notification to the subscriber and/or user would jeopardize the

---

[1] The target cellular phone and other cellular devices in the area might experience a temporary disruption of service from the service provider. Any potential service disruption to non-target devices would be temporary and all operations will be conducted to ensure the minimal amount of interference to non-target devices. Agents will make no affirmative investigative use of any non-target data absent further order of the court, except to identify and distinguish the target cellular phone from other devices. Once agents distinguish the information for the target cellular phone, they will no longer review the information for the other cell phones in any manner and will promptly delete it thereafter.

fugitive and criminal investigations and cause the user to discard this device further delaying the apprehension of ROCK.

The above information is true and correct to the best of my knowledge, information, and belief.

*/s/ Brandon D'Alessandro*
Brandon D'Alessandro
Deputy U.S. Marshal

Sworn and subscribed before me by telephone,
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 3rd of November, 2021.

_____
CYNTHIA REED EDDY
Chief United States Magistrate Judge